

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza*
*New York, New York 10278*

November 7, 2024

**BY ECF**

The Honorable J. Paul Oetken
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

  Re: *United States v. Siddell Martinez*, 24 Cr. 68 (JPO)

Dear Judge Oetken:

  Defendant Siddell Martinez is scheduled to be sentenced on November 15, 2024, after pleading guilty to conspiracy to commit Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951. For the reasons set forth below, the Government respectfully submits that a sentence within the stipulated United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range of 57 to 71 months' imprisonment is warranted in this case. A sentence within the stipulated Guidelines range is sufficient, but not greater than necessary, to account for the factors set forth in Title 18, United States Code, Section 3553(a).

## I.  Offense Conduct

###   A. August 2023 Robbery

  In August 2023, law enforcement began investigating an incident in which victims who traveled from Maine to New York City to purchase a vehicle were robbed of United States currency. Specifically, in August 2023, a certain individual who resided in Maine ("Victim-1") saw a listing on Facebook Marketplace, an e-commerce platform, advertising the sale of a 2018 Dodge Challenger for $20,000, which Martinez had helped make. (Presentence Report ("PSR") ¶ 9). Victim-1 messaged the seller via Facebook Messenger and text message to negotiate the sale of the vehicle, and Victim-1 ultimately agreed to fly to New York City for the purpose of purchasing the Dodge Challenger for $16,000. (*Id.*).

  On August 24, 2023, Victim-1 and his brother ("Victim-2") arrived in New York City, with Victim-1 carrying approximately $48,000 in cash in a satchel. (PSR ¶ 10). Victims-1 and -2 then met with two individuals later identified as Martinez and his co-defendant, Dakotah Campbell, at a gas station in Queens, New York. (*Id.*). Martinez and Campbell showed the Victims the Dodge Challenger. (*Id.*). As Victim-1 inspected the vehicle, Victim-2 went into the gas station. (*Id.*). With Victim-1 alone and holding the bag full of money, Martinez directed Campbell by text message to steal Victim-1's bag, sending the following messages:

**MARTINEZ**: You gotta grab the bag bro

**MARTINEZ**: We out bro duck it

**MARTINEZ**: Grab it push him we out

**MARTINEZ**: Bro grab it

**MARTINEZ**: either grab it or we out

(PSR ¶ 14).

At Martinez's direction, Campbell circled Victim-1 and grabbed the satchel, which contained the cash, and punched Victim-1 repeatedly in the head and neck. (*Id.*). Martinez, who was in the driver's seat of the Dodge Challenger, sped off as Campbell ran alongside the vehicle. (*Id.*). Martinez subsequently crashed the Dodge Challenger into a parked van and exited the vehicle and ran away. (*Id.*). The stolen cash was never recovered. (PSR ¶ 15).



### C.  Martinez's Arrest & Pretrial Custody

Martinez was arrested on February 14, 2024 and has been in custody at the Metropolitan Detention Center ("MDC") in Brooklyn since then.

On or about May 4, 2024, Martinez—while in custody in the MDC—used a contraband cellphone to call into an Instagram live broadcast by video, in which Martinez and two other individuals discussed a "legit" Dodge Challenger Hellcat vehicle that Martinez was trying to sell. They also referenced a BMW F80 stolen from an auto shop in New Jersey shortly before Martinez was arrested.[1]  One of the hosts of the livestream asked Martinez, "would you say, that you're coming out--when you get out [of jail], you have probably like 10 times more connections than you did when you came in?"  Martinez responded, "yeah, hell yeah," to which the host responded, "Do they not understand that they're just gathering people up into a big networking thing?  If you wanna get some good connections, bro, go to jail."

### D.  Martinez's Criminal History

The instant offense is Martinez's eighth criminal conviction in just a few years.  Martinez's first arrest was in 2020, when he was 19 years old, and involved Martinez presenting a false driver's license to purchase a vehicle in Newport News, Virginia.  (PSR ¶ 48).  Martinez then sustained multiple convictions related to his attempts to "purchase" or "sell" vehicles under false pretenses, often employing schemes involving Facebook Marketplace and fraudulent checks.  (*See* PSR ¶¶ 49, 51, 52, 53, 54).  As a result of Martinez's criminal conduct, car sellers were tricked into "selling" their cars, in some cases luxury cars, to Martinez, but were ultimately never compensated.  Martinez also has multiple pending cases for the same or similar conduct.  (*See* PSR ¶¶ 60, 61, 62).

### E.  Guilty Plea and PSR

Martinez pleaded guilty on June 6, 2024 to Count One of the S2 Superseding Indictment, conspiracy to commit Hobbs Act robbery in violation of Title 18, United States Code, Section 1951, before United States Magistrate Judge Robyn F. Tarnofsky.  Martinez pleaded guilty pursuant to a plea agreement with the Government, in which the parties stipulated that the applicable Guidelines range is 57 to 71 months' imprisonment, given the total offense level of 21 and Martinez's criminal history category of IV.  This Court accepted Martinez's guilty plea on July 15, 2024.  (Dkt. No. 32).

Probation filed its final PSR on October 23, 2024.  In the PSR, Probation agreed with the Guidelines calculation in the plea agreement.  (*See* PSR ¶ 113).  Probation recommends a within-Guidelines sentence of 57 months' imprisonment.  (*See* PSR at 30).  In the sentencing submission filed on behalf of Martinez, defense counsel requested a term of imprisonment of 42 months.  (*See* Def. Mem. at 2).

---

[1] *See* https://www.youtube.com/watch?v=yj1gBdINgkc.

Hon. J. Paul Oetken                                                                    Page 4
November 7, 2024

## II.    Applicable Law

As the Court is well aware, the Guidelines still provide strong guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and its progeny.  Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings.  *Id.* at 49.  After that calculation, however, the Court must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature, circumstances, and seriousness of the offense, the need to adequately deter criminal conduct and promote respect for the law, and the need to protect the public from further crimes of the defendant.  *Id.* at 50 & n.6; *see also* 18 U.S.C. § 3553(a).

## III.    Discussion

In this case, a sentence within the stipulated Guidelines range of 57 to 71 months' imprisonment is appropriate in light of the 3553(a) factors.  Such a sentence would reasonably reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence, and protect the public from further crimes by Martinez.

*First*, a within-Guidelines sentence would appropriately account for the nature and circumstances of the underlying offense.  The robbery that Martinez evidently masterminded was unquestionably dangerous, with Victim-1 being punched repeatedly and sustaining injury and Martinez speeding away and ultimately crashing a vehicle, putting additional people at risk.  The fact that no one was more seriously injured is only attributable to luck.

*Second*, such a sentence would promote respect for the law.  As described below, Martinez committed the instant offense after a series of prior arrest and convictions, the vast majority of which have involved very similar conduct.  Martinez's conduct after the offense shows flagrant disregard for the law and for law enforcement, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████  And Martinez's concerning behavior does not stop there.  Indeed, even after he was detained in connection with the instant offense, he obtained a contraband cellphone and then use that cellphone to  call into a video Instagram live discussion (where he appeared on video from his cell in MDC) to discuss stolen cars and making "contacts" in jail.

*Finally*, a within-Guidelines sentence would provide specific deterrence and protect the public from further crimes by Martinez.  In the span of three years, Martinez sustained six convictions and multiple additional arrests for the same or similar conduct at issue in the present case.  Many of those convictions resulted in suspended sentences; however, neither the threat of imprisonment nor actual imprisonment has deterred Martinez from engaging in this sort of unlawful conduct.  Victims have lost tens of thousands of dollars due to the defendant's conduct.

Hon. J. Paul Oetken                                                                                Page 5
November 7, 2024

A significant term of incarceration is required to deter Martinez from continuing to engage in crime.

      The Government does not seek to minimize the challenging circumstances of Martinez's childhood and upbringing, which are the focus of the defense submission. (*See* Def. Mem. at 3 (describing Martinez as "[a]nother wretched misfit swallowed up in the living death of institutional retribution")). However, the Government notes that Martinez had many opportunities unavailable to others with similarly difficult backgrounds, including a scholarship to attend a prestigious university and a degree from that institution. This is a defendant who had many other choices and opportunities for legitimate work, choices that are not always available to many other defendants. However, time and again, Martinez has chosen the easy way. He has decided that he wants to make money by cheating innocent people out of tens of thousands of dollars.

      Nor does the Government challenge the presence of "friends, loved ones, and community members who believe in [Martinez] and are eager to help him rebuild his life." (*Id.*). But again, the Government notes that Martinez had this supportive network within the last year, when he *continued* to commit crimes, even while in custody. The Government very much hopes that Martinez is sincere when he writes to the Court that he is "determined to turn [his] life around and become a productive member of society," but can only take that representation at face value when

████████████████████████████████████████████[2]

---

[2] In addition to a term of imprisonment, the Government respectfully suggests that a term of supervised release with the special conditions set forth in the PSR is appropriate here too. (*See* PSR at 34-35). In light of recent Second Circuit decisions, the Government respectfully requests that, for each special condition of supervised release that the Court intends to impose, the Court briefly state its reasons for concluding that each such special condition is "reasonably related" to at least one of the factors set forth in U.S.S.G. § 5D1.3(b). *See, e.g.*, *United States v. Sims*, 92 F.4th 115 (2d Cir. 2024) (vacating special condition and remanding for district court to provide sufficient explanation for imposition of condition); *United States v. Oliveras*, 96 F.4th 298 (2d Cir. 2024) (same); *United States v. Jimenez*, No. 22-1022, 2024 WL 1152535 (2d Cir. Mar. 18, 2024) (summary order) (same).

Hon. J. Paul Oetken                                                                    Page 6
November 7, 2024

## **Conclusion**

     For the reasons set forth above, the Government respectfully submits that the Court should sentence the defendant to a within-Guidelines sentence.

                           Respectfully submitted,

                           DAMIAN WILLIAMS
                           United States Attorney for the
                           Southern District of New York


by:     /s/
                           Courtney L. Heavey
                           Christy Slavik
                           Assistant United States Attorneys
                           (212) 637-1113

cc:    Counsel of record (by ECF)